NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSE COLON,**<br><br>    Plaintiff,<br><br>    v.<br><br>**CITY OF PATERSON, ANTHONY CASTRANOVA, individually and in his capacity as a City of Paterson Police Officer, TERRENCE DUFFY, individually and in his capacity as a City of Paterson Police Officer, KELVIN MATOS individually and in his capacity as a City of Paterson Police Officer and DOES 1-15,**<br><br>    Defendants. | Civ. Docket No.: 12-1653 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 for injuries suffered while officers of the Paterson Police Department ("PPD") were arresting him. The instant matter comes before the court on motions for summary judgment filed by Defendants City of Paterson, Anthony Castranova, Terrance Duffy, and Kelvin Matos. The court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint presents questions of federal law. For the reasons set forth below, the motion is **DENIED.**

I.   BACKGROUND

On March 17, 2010, Plaintiff Jose Colon drove two individuals, Carlos Vasquez and Kenny Garcia, to St. Joseph's Medical Center in Paterson, New Jersey so that they could burglarize a car in order to obtain a laptop. (City of Paterson's

1

Statement of Facts ("Paterson SOF") at ¶ 1). Plaintiff drove Vasquez and Garcia to the parking garage and then waited for the two to return. (*Id.* at ¶ 2). Upon their return, they urged Plaintiff to leave quickly because a security officer had seen them. (*Id.* at ¶ 2). PPD officers Anthony Castranova, Terrence Duffy, and Kelvin Matos (collectively "the Officer Defendants") responded to the report of this burglary. (*Id.* at ¶ 3).

Plaintiff testified at his deposition that police vehicles blocked the entrance and exit to the garage. (*Id.* at ¶ 4). Plaintiff knew the police officers were yelling for him to stop, but he would not comply. (*Id.* at ¶ 4). Plaintiff knew he was eluding the police officers, and during his attempt to leave the garage, he struck a vehicle driven by Officer Duffy. (*Id.* at ¶ 4; Official Report of Terrence Duffy ("Duffy Report"), ECF No. 48-8 at 18). After hitting Officer Duffy's vehicle, Plaintiff continued driving, ran through a stop sign, and struck another vehicle. (Paterson SOF at ¶ 5). As a result of the impact, Plaintiff's vehicle started spinning, and once it came to a rest, Plaintiff, Garcia, and Vasquez exited the vehicle and started to run from the police. (*Id.* at ¶ 5; Declaration of Lawrence Hersh ("Hersh Decl.") Exhibit G, ECF No. 48-8 at 1). The police chased Plaintiff. (*See* Paterson SOF at ¶¶ 6-8).

What happened next is disputed, but for the purposes of this motion, we must accept the version of the facts most favorable to the Plaintiff. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 968 (3d Cir. 1996) (*citing Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir. 1987)). According to the Plaintiff, he ran about 25 feet before the police stopped his flight by jumping on his back. (Declaration of Jose Colon ("Colon Decl.") at ¶ 2; Plaintiff's Deposition at 35; Hersh Decl. Exhibit G, ECF No. 48-8 at 9). After slamming Plaintiff into the ground, the police immediately put him into handcuffs. (Plaintiff's Deposition at 36). Plaintiff claims that once he was on the ground, Plaintiff gave up and stopped resisting arrest. (Plaintiff's Deposition at 37).

According to the Plaintiff, "at least two police officers" began hitting him with a long, hard metal object, either a night stick or a flash light as he lay on the ground in handcuffs and not resisting. (Colon Decl. at ¶ 3). Officer Castranova agrees that he did strike Plaintiff with an expandable baton called an ASP. (Official Report of Officer Anthony Castranova, ECF No. 48-9 at 3). Officer Matos admits to being with Castranova as the confrontation with Colon occurred, but both deny that Matos hit Plaintiff. (Official Report of Officer Kelvin Matos, ECF No. 48-8). According to documents from PPD Internal Affairs, Officer Duffy stated that he was apprehending Kenny Garcia while Matos and Castranova pursued Colon. (Hersh Decl. Exhibit G, ECF No. 48-8 at 4).

The officers hit the top and rear part of Colon's head three or four times with the baton while he was lying face down and handcuffed. (Colon Decl. at ¶ 4). They also hit him multiple times on other parts of his body, including his ribs, back, and chest while he was lying on the pavement. (Colon Decl. at ¶ 5). The police then dragged him face-down to the patrol vehicle, causing the skin to come off of his arm, elbow, knee, and hand. (Plaintiff's Deposition at 40-41).

Plaintiff needed 18 staples in his head to close the wounds from the baton strikes. (Plaintiff's Deposition at 44). His entire arm swelled. (Plaintiff's Deposition at 45-47). His hand remained swollen for a long time, and he had to get physical therapy for his hand. (Plaintiff's Deposition at 45-58). Plaintiff developed post-traumatic stress disorder as a result of the confrontation with the police. (Plaintiff's Deposition at 57).

Plaintiff filed a Section 1983 Complaint, seeking damages against the Officer Defendants for excessive force and against the City of Paterson ("Paterson") for maintaining a policy, practice, or custom of deliberate indifference to the constitutional rights of the people the PPD serves.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III.   DISCUSSION

In this motion, Defendants argue that the claims for excessive force and municipal liability should be dismissed. The Officer Defendants argue that they are entitled to qualified immunity, and Paterson argues that Plaintiff has not brought

forth enough evidence to prove that Paterson had a policy, practice, or custom of acquiescing to excessive force. Defendants' arguments are not persuasive.

### A.     Qualified Immunity

At the outset, Castranova, Matos, and Duffy argue that qualified immunity should shield them from lawsuit. The court does not agree.

Under the theory of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Qualified immunity encompasses mistaken judgments that are not plainly incompetent. *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). In determining whether a right has been clearly established, its contours must be sufficiently clear so that a "reasonably competent officer" would have understood that he was violating a clearly established right. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Although the Third Circuit has never spoken directly on the issue of whether there is a clearly established right of a non-resisting arrestee to be free from beatings with a baton, the Fourth Circuit has stated specifically that the use of any "unnecessary, gratuitous, and disproportionate force . . . arising from . . . a baton, a taser, or other weapon [] precludes an officer from receiving qualified immunity if the subject is unarmed and secured." *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 735 (4th Cir. 2013). The Sixth Circuit has spoken similarly. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) ("The right of an unresisting suspect to be free from baton strikes . . . was clearly established over three years before Jones died."). We agree that a reasonable officer would know that an arrestee who is handcuffed and not resisting has a clearly established rights to be free from the strikes of a police officer's baton. Therefore, the Officer Defendants are not entitled to qualified immunity.

### B.     Excessive Force of Officer Defendants

Plaintiff alleges that "at least two" of the three Officer Defendants used excessive force when they struck him with a baton while he lay face-down, handcuffed, and not resisting arrest. (Colon Decl. at ¶¶ 2-3). "Excessive force

4

claims arising out of an arrest are analyzed under the Fourth Amendment." *Yarnall v. Mendez*, 509 F. Supp. 2d 421, 430 (D. Del. 2007) (*citing Graham v. Connor*, 490 U.S. 386 (1989)). When a police officer uses force to effectuate an arrest, that force must be reasonable. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (*citing Graham*, 490 U.S. at 396). The reasonableness inquiry is objective but should give appropriate scope to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." *Ibid.* (*quoting Graham*, 490 U.S. at 397). The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case." *Ibid.* (*quoting Graham*, 490 U.S. at 396). Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004) (*citing Graham,* 490 U.S. at 396).

It is unreasonable to strike a handcuffed suspect who is face down and not resisting arrest. *See Hill v. Algor*, 85 F. Supp. 2d 391, 400 (D.N.J. 2000) (finding genuine issue of fact where Plaintiff claimed police officers hit his face with a gun and kicked him while he was on the ground and not resisting arrest). Although Colon had been fleeing police and proven he was dangerous prior to the baton strikes, it does not excuse the use of force upon a suspect who had completely given up resistance at the time the police administered the strikes.

It is undisputed that Officer Castranova hit Plaintiff. It is also undisputed that Officer Matos saw the blows occur. Plaintiff claims that "at least two" officers hit him. Construed in the light most favorable to Plaintiff, this means that there is a disputed issue of fact as to whether Officer Matos hit Plaintiff. The surrounding circumstances giving rise to the strikes to Plaintiff are also disputed, but when construed in the best light for the Plaintiff, the baton strikes were unreasonable because they hit a restrained suspect who was not resisting. Therefore, the excessive force claims against Matos and Castranova cannot be dismissed.

Plaintiff argues that Officer Duffy should at least be liable as a bystander. An officer is liable under Section 1983 if a constitutional violation occurs in his presence, he has a realistic and reasonable opportunity to intervene, and he fails to or refuses to intervene. *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). Plaintiff, however, does not produce evidence from which a rational jury could conclude that Duffy had a realistic and reasonable opportunity to intervene.

5

Plaintiff is only sure that two officers confronted him; the third one is a matter of speculation. The Plaintiff's only basis for naming Duffy is that Duffy's name appears on Colon's arrest report. (Hersh Decl. Exhibit G, ECF No. 48-9 at 1). It is uncontroverted that Officer Duffy began pursing Kenny Garcia when Matos and Castranova began their pursuit of Colon. (*See* Hersh Decl. Exhibit G, ECF No. 48-8 at 48).

The Plaintiff's narration of the events between the beginning of his flight and the baton strikes indicates an elapse of very little time. Plaintiff claims that he only ran 25 feet before the two officers caught him. (*Id.* at 13). Plaintiff claims that when police reached him, they slammed him into the ground. (Plaintiff's Deposition at 34). He was apparently tackled from behind, as he states he was not looking back as the officers were chasing him. (*Id.*). This indicates that there was no struggle, and that the only time that passed between Colon exiting the car and being caught was the amount of time it took Colon to run 25 feet. Colon stated that once the police caught up with him, he immediately gave up resisting arrest and that the only form of resistance during the entire incident was his 25-foot flight. (*See* Plaintiff's Deposition at 37; Hersh Decl. Exhibit G, ECF No. 48-8 at 13). He states that once he was on the ground, the police handcuffed him "right away" and then started beating him. (Plaintiff's Deposition at 37). This narrative does not indicate an elapse of time that could have been much more than a minute.

Plaintiff failed to produce any evidence about the length of time Duffy was engaged in the pursuit and capture of Garcia. Plaintiff did not take Duffy's deposition or get a statement from Garcia. Plaintiff did not even ask Officers Castranova or Matos at their depositions about Duffy's whereabouts at the time the baton strikes occurred. Plaintiff did not see Duffy with his own eyes. On the evidence presented, Plaintiff cannot prove by a preponderance of evidence that Officer Duffy's pursuit and capture of Kenny Garcia was so fast as to allow Duffy a realistic and reasonable opportunity to intervene in the baton strikes. *See Sharp v. Johnson*, CIV.A. 00-2156, 2008 WL 941686, at *11 (W.D. Pa. Apr. 7, 2008) *aff'd*, 669 F.3d 144 (3d Cir. 2012) (noting that a plaintiff must prove each element of a Section 1983 claim by a preponderance of the evidence).

The Plaintiff asks the court to take into consideration the fact that Plaintiff hit Officer Duffy's car. Plaintiff argues that this incident motivated Officer Duffy to ignore the baton strikes. Even if we assumed that Duffy had animus against the Plaintiff, there still is not evidence from which a rational jury could conclude that Officer Duffy had a realistic and reasonable opportunity to intervene. The evidence indicates that Duffy was engaged in a different pursuit at the time the strikes

occurred, and Plaintiff failed to collect any evidence affirmatively indicating that Duffy was in a position to stop the strikes.

### C. City of Paterson

Municipalities may be sued under Section 1983 for depriving someone of his or her constitutional rights. *See Marran v. Marran*, 376 F.3d 143, 155 (3d Cir. 2004). "When a suit against a municipality is based on §1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (*citing Monell v. Dept. of Social Servs. New York City*, 436 U.S. 658 (1978)).

A municipal policy or custom can be established in two ways. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991) (*citing Monell*, 436 U.S. at 690). A course of conduct is "custom" when, though not authorized by law, such practices of state officials are so permanently and well-settled as to virtually constitute law. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Liability based on a custom rather than a formal adopted policy proceeds on the theory that the relevant practice is so widespread as to have the force of law. *Board of County Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). Custom may also be established by proof of knowledge and acquiescence. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). The Supreme Court has recognized that where a violation of federal rights is a "highly predictable consequence" of an inadequate custom in a situation likely to recur, municipal liability may attach based upon a single application of the custom. *Monaco v. City of Camden*, C.A. No. 04-2406(JBS), 2008 WL 8738213, at *7 (D.N.J. April 14, 2008) (*citing Board of County Com'rs*, 520 U.S. at 409-10 (1997)).

In addition to establishing a policy or custom of constitutional violations, a plaintiff also bears the "burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* at 850 (*citing Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 507 (3d Cir. 1985)). Causation is normally a jury question. *Panas v. City of Philadelphia*, 871 F. Supp. 2d 370, 378

(E.D. Pa. 2012). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Bielevicz*, 915 F.2d at 851.

Plaintiff seeks liability under Section 1983 against Paterson on theories that the city had customs of failing to properly investigate civilian complaints of excessive force and failing to train police in the use of force. Plaintiff has brought forth sufficient evidence to prove both theories.

### i. Failure to Investigate Civilian Complaints of Excessive Force

In support of his claim that the PPD failed to properly investigate citizen complaints of excessive force, Plaintiff brings forth the following statistics about claims of excessive force against the PPD.

| Reporting Period | Number of cases Investigated | Number of cases Sustained | Number of cases EXON-NS-UNF-ADMC[1] |
|---|---|---|---|
| **2005** | 87 | 2 | 85 |
| **2006** | 72 | 1 | 70 |
| **2007** | 72 | 0 | 72 |
| **2008** | 132 | 1 | 131 |
| **2009** | 126 | 0 | 126 |
| **2010** | 121 | 1 | 120 |

(Report of Plaintiff's Expert, Christopher Chapman ("Chapman Report"), 12).

In response, Paterson argues that Plaintiff's failure to investigate theory is flawed because: 1.) statistics alone do not establish a custom of failing to investigate, and 2.) the PPD has an Internal Affairs Department that investigated all the complaints.

*Beck v. City of Philadelphia*, 89 F.3d 966 (3d Cir. 1996) is the seminal Third Circuit case addressing municipal liability for failure to investigate civilian complaints of excessive force. *Merman v. City of Camden*, 824 F.Supp.2d 581, 590 (D.N.J. 2010). A city's failure to properly investigate claims of excessive force is construed as a tacit authorization of the use of excessive force. *See Beck*, 89 F.3d at 967; *Merman*, 824 F.Supp.2d at 589.

---

[1] Exonerated, Not Sustained, Unfounded, or Administratively Closed

8

Statistics alone cannot justify a jury's finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers. *Merman*, 824 F.Supp.2d at 591. However, statistics plus a showing that an offending officer had been the subject of similar complaints before can establish facts from which a reasonable jury could conclude that the police department tacitly authorized excessive use of force. *Katzenmoyer v. Camden Police Department*, 2012 WL 6691746, at *4 (D.N.J. 2012); *see also Beck*, 89 F.3d 966 (finding that five complaints of excessive force within the past five years against the offending police officer was sufficient to show tacit approval of the use of excessive force).

Where the number of complaints in relation to the number of officers is very high, and a pattern of escalating complaints presents itself, the significance of the quantitative evidence is substantial and informs the court. *Merman*, 824 F.Supp.2d at 591. In *Merman*, for example, the court put substantial weight into the fact that in a police department of 400 officers, Internal Affairs received over 470 complaints of excessive force over the course of six years and that only two of them resulted in a finding of a violation of departmental rules. *Merman*, 824 F.Supp.2d at 590-91. The *Merman* court also placed weight on the escalating number of excessive force complaints in the year leading up to the incident. *Id.* at 591.

The instant case presents a statistically similar set of circumstances. In Paterson's department of 519 officers, citizens filed 610 complaints of excessive force over the course of five years, and only five of them were sustained. The statistics also show the number of complaints escalating by a significant percentage between 2005 and 2010. According to Plaintiff's expert, the fact that only five out of 610 complaints were sustained is objectively unreasonable. (Chapman Report at 12). This expert's opinion adds further weight to the statistics.

A multiplicity of excessive force complaints surrounding a single officer suggest that those occurrences are not isolated incidents, but rather constitute a pattern of dangerous behavior requiring real intervention on the part of the city. *Katzenmoyer*, 2012 WL 6691746, at * 4 (*citing Beck*, 89 F.3d at 975). Plaintiff has supplied evidence that one of the offending officers, Kelvin Matos, had been the subject of four complaints of excessive force prior to Plaintiff's March 17, 2010 complaint.[2] (Hersh Decl. Exhibits I-K). Matos was the subject of two more citizens' complaints for excessive force over the course of the 19 months after Plaintiff's

---

[2] The dates of the previous complaints were: December 17, 2007, May 21, 2009, January 8, 2010, and February 3, 2010.

9

complaint.[3]  (Hersh Decl. Exhibits M-N).  Of special note, two citizens had complained of Matos's misuse of a baton or flashlight before Plaintiff did.  At no time did the PPD take any remedial action with regard to the complaints about Matos.  Matos's record is similar to the record of the offending officer in *Beck*, who had five complaints of excessive force in the five years preceding the relevant incident.

The fact that the PPD's Internal Affairs bureau investigated all the complaints against Matos does not entitle Paterson to summary judgment.  Where the only evidence in an Internal Affairs investigation is the word of the complainant against the word of police officers, a jury could conclude that Plaintiff's version of the facts is the correct one and that the Internal Affairs investigation process is shielding officers from the consequences of their misconduct. *Merman*, 824 F.Supp.2d at 592-93.  Such is the case here.  Internal Affairs's justification for adjudicating Plaintiff's complaint "Not Sustained" and taking no remedial action is only a lack of neutral, third-party evidence to corroborate either version of the story.  Internal Affairs only considered the Plaintiff's complaint and the reports of the officers.  This is also true for two of the other complaints against Matos that occurred before Plaintiff's beating.  (Hersh Decl. Exhibits I, K).  Under such circumstances, the jury should decide which version of the facts is true. *Merman*, 824 F.Supp.2d at 593.

In sum, two forms of evidence combine to raise disputed issues of material fact as to whether Paterson had a policy, practice, or custom of failing to investigate complaints about the excessive use of force and whether this tacit authorization caused Plaintiff's injuries.  The specific evidence creating this factual issue is: 1.) the statistical evidence that Paterson tolerated excessive force, and 2.) the evidence that Paterson ignored Kelvin Matos's pattern of using excessive force.  Accordingly, Paterson's motion for summary judgment on Plaintiff's failure to investigate theory of Section 1983 liability must be denied.

### ii. Failure to Train Police in the Use of Force

In *Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that inadequate police training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of the people with whom the police come into contact, and the failure to train causes the constitutional violations.  *Id.* at 387-88.

---

[3] The dates of the subsequent complaints were: March 15, 2011 and November 18, 2011.

In this case, there is at least a disputed issued of fact whether the PPD's method of training its officers in the use of batons was deliberately indifferent to the rights of citizens. The PPD requires its officers to purchase and carry a baton, such as the Armament System and Procedure baton ("ASP") (Deposition of Chief William Fraher ("Fraher Dep.") at 28-29). The manufacturer of the ASP informs purchasers that strikes to the head and chest may constitute deadly force. (Chapman Report at 7). The ASP manufacturer instructs officers to abandon the ASP and transition to firearms when deadly force is justified. (Chapman Report at 7). According to Plaintiff's expert, the proper use of an ASP is a perishable skill. (Chapman Report at 9). The manufacturer of the ASP recommends a recertification process every 2-3 years via a skills-based competency test. (Chapman Report at 7-9). Despite the obvious dangers of using an ASP, the evidence, when construed in the best light for the Plaintiff, demonstrates that the PPD failed to adequately train its officers in the use of an ASP.

The PPD does require the police officers to undergo use of force training twice a year, but the training is only classroom training that does not necessarily cover the use of the ASP. (Fraher Dep. at 44, 52-53). The manufacturer of the ASP recommends an 8-hour, hands-on training course. (Chapman Report at 6). The PPD had a department-wide training with the ASP one time, about 15 years ago, when the ASP was first introduced. (Fraher Dep. at 49-51). New police officers train on the use of the ASP during police academy or when they join the PPD, and the semi-annual trainings may cover the ASP, but otherwise, there is no formal training on the use of an ASP. (Fraher Dep. at 32-33, 53). Officer Matos recalls some training in the use of the ASP during semi-annual use of force trainings (Deposition of Kelvin Matos at 19), but Castranova does not, (Deposition of Anthony Castranova ("Castranova Dep.") at 66-67).

In its defense, Paterson argues that the PPD did not deviate from Attorney General Guidelines in its failure to train in the use of the ASP. Adhering to these guidelines, however, is not exculpatory. *See Wade v. Colaner*, CIVA306-CV-3715FLW, 2009 WL 1738490 (D.N.J. June 17, 2009) ("[T]he protections of the Fourth Amendment are not subordinate to the Attorney General's guidelines on the use of force."). Plaintiff has produced evidence that the PPD required the officers to carry a baton and that the PPD was aware of a high number of citizen complaints about the use of the batons, yet the PPD did not even attempt to implement the re-training recommendations that the manufacturer of the ASP recommended.

Moreover, there is a disputed issue of fact as to whether the PPD was even following the Attorney General Guidelines in the execution of the semi-annual use

11

of force training. Plaintiff's expert notes that the PPD was training officers in an outdated use of force concept called the "continuum of force." (Chapman Report at 5). According to Plaintiff's expert, "New Jersey Police Departments which still use the Use of Force Continuum are instructing their officers to use excessive force in violation of the New Jersey Use of Force Policy and guidance received from the courts." (Chapman Report at 5). Plaintiff's expert also points to Castranova's deposition as evidence of a specific causal link between the deficient PPD training and Plaintiff's injuries. Castranova stated that he learned in his PPD use of force trainings that it is permissible to use "one level of force above whatever someone else is using against you." (Castranova Dep. at 59). According to Plaintiff's expert, this is incorrect; it is only permissible for police to use the same level of force that a suspect is using against the officer. (Chapman Report at 19).

Plaintiff has also raised a disputed issue of material fact as to whether there was a direct causal connection between the alleged failure to train police in the use of the ASP and Plaintiff's injuries in that Officer Castranova, who admits to striking the Plaintiff, acknowledges that the PPD never trained him in the allegedly perishable skill of using an ASP. Castranova only trained specifically with the ASP once, in March in 2004, when he was in police academy, well more than three years before the incident. (Castranova Dep. at 53-58). Moreover, he stated that his semi-annual use of force trainings did not even cover the ASP: "[T]hey just explain the force continuum and then the different levels of how you can use one level above whatever someone is using against you. Did they use scenarios when to take out your ASP, no." (Castranova Dep. at 59).

Accepting all the evidence in the best light for the Plaintiff, a rational jury could conclude that the PPD's failure to train its officers in the use of force caused Plaintiff's injuries. Therefore, Plaintiff's claim against Paterson for Section 1983 liability on a failure to train theory also survives summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, Officer Duffy's motion for summary judgment is granted. The motions of all other Defendants are denied. An appropriate order follows.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 9, 2014**